IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BERTINA WOODSON** | § | **PLAINTIFF** |
| | § § § | |
| **v.** | § § § | **Civil No. 1:19cv463-HSO-JCG** |
| **BP EXPLORATION & PRODUCTION, INC. and BP AMERICA PRODUCTION COMPANY** | § § § § § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION [35] FOR SUMMARY JUDGMENT
BASED ON LACK OF CAUSATION**

BEFORE THE COURT is Defendants BP Exploration & Production, Inc. and BP America Production Company's Motion [35] for Summary Judgment Based on Lack of Causation. After consideration of the record, Defendants' Motion, and relevant legal authority, the Court is of the opinion that Defendants' Motion [29] for Summary Judgment should be granted.

I. BACKGROUND[1]

Plaintiff Bertina Woodson ("Woodson"), who is proceeding pro se in this matter, is a member of the *Deepwater Horizon* Medical Benefits Class and is covered by the Medical Settlement Agreement ("MSA") entered in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* commonly

---

[1] All facts and inferences are presented in the light most favorable to Woodson, the nonmoving party. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020).

referred to as "MDL 2179".  Compl. [1] at 1; Am. Compl. [4] at 1; Mem. [36] at 1 n.1.  The MSA resolved "certain claims of individuals engaged as clean-up workers and residents of particular geographical boundaries in the Gulf of Mexico related to their exposure to oil and/or dispersants arising from the DEEPWATER HORIZON incident and subsequent response efforts." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2:10-md-2179, 2016 WL 4091416 at *4 (E.D. La. Aug. 2, 2016).  On January 11, 2013, the MSA was given final approval by the MDL 2179 court and became effective on February 12, 2014.  *See id.*

According to the Amended Complaint [4], Woodson was defined by the MSA as a "Zone A Resident," for at least 60 days between the dates of April 20, 2010, and September 30, 2010.  *See* Am. Compl. [4] at 1, 5.  Woodson alleges that, as a Zone A Resident, she was exposed through inhalation, airborne, and direct contact to oil, dispersants, and other harmful chemicals as a result of the 2010 *Deepwater Horizon* Oil Spill.  *See id.* at 5.  On more than one occasion, Woodson claims that her eyes, nose, mouth, and skin were exposed to oil, dispersants, and other harmful chemicals.  *See id.* at 6.  Woodson asserts that the various harmful effects caused by the oil, dispersants, and other harmful chemicals include the following conditions diagnosed after April 16, 2012:  allergic rhinitis; chronic obstructive pulmonary disease ("COPD"); pleurisy; urticaria; eczema; multiple sclerosis; cellulitis; dysphagia; gastroesophageal reflux disease ("GERD"); dry eye syndrome; and depression.  *See id.*

The MSA offered class members who did not opt-out of the *Deepwater Horizon* Medical Benefits Class two remedies for pursuing their medical claims. *See In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 2:10-md-02179-CJB-JCW, ECF 6427-1 at 32 (E.D. La. Oct. 5, 2018). The first was a compensation plan which provided fixed payments for Specified Physical Conditions ("SPC"). *Id.* at 35, 44. The second remedy allowed class members to bring a lawsuit against BP America Production Company and BP Exploration & Production, Inc. ("BP Defendants") for "Later-Manifested Physical Conditions" ("LMPCs"). *Id.* at 60.

LMPCs are physical conditions which a class member claims are the result of spill-related exposures that were first diagnosed after April 16, 2012. *Id.* at 20-21. Lawsuits seeking recovery for LMPCs are referred to as Back-End Litigation Option ("BELO") suits. *Id.* at 12. In a BELO lawsuit, a plaintiff must prove legal causation. *Id.* at 70. Woodson is asserting LMPC claims in this BELO lawsuit. *See* Am. Compl. [4] at 1-2, 5-6.

Woodson received a valid Notice of Intent to Sue Letter, as required by the MSA, on or about August 24, 2018. *See id.* at 6. On or about September 28, 2018, she received BP Defendants' Notice of Election Not to Mediate. *See id.* Woodson timely filed her BELO Complaint [1] on March 27, 2019, within the 6-month time period of receiving BP Defendants' Notice required by the MSA. *See id.* Woodson filed an Amended BELO Complaint [4] on April 19, 2019, and the case was transferred to this Court from the Eastern District of Louisiana on August 11, 2019.

3

Order [10].  Plaintiff's counsel subsequently withdrew from representing her, and she is now proceeding pro se.  *See* Order [23] at 1-3.

BP Defendants have filed a Motion [35] for Summary Judgment Based on Lack of Causation.  Woodson did not respond within the time permitted under the Court's Uniform Local Civil Rules.  The Court will consider BP Defendants' Motion [35] for Summary Judgment on the merits without the benefit of a response from Woodson.

The Court does note that, well after the deadline for filing a response, Woodson filed a Notice [39] of Filing Exhibits.  Although she has filed no substantive response to BP Defendants' Motion [35], the Court will consider Woodson's exhibits in resolving BP Defendants' Motion [35] for Summary Judgment.

## II.  DISCUSSION

A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *See Bryant*, 965 F.3d at 391.

B.   Proof of causation

BP Defendants contend that Woodson has failed to establish causation.  Mot. [35] at 1.  Specifically, they maintain that Woodson has not produced expert testimony, as is required in a toxic tort suit under general maritime law and the MSA, to establish that her LMPCs were caused by her residency within an area purportedly affected by the clean-up efforts following the Oil Spill.  Mem. [36] at 7.  Indeed, the record reflects that Woodson has not submitted any evidence of causation, merely the claims she makes within her Amended Complaint.

In a toxic exposure tort case such as this, the Fifth Circuit has announced the following causation standard:

> General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury. Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.  Thus, there is a two-step process in examining the admissibility of causation

>evidence in toxic tort cases. First, the district court must determine whether there is general causation. Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.

*Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (internal citations omitted).

For a plaintiff to establish legal causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain a plaintiff's burden in a toxic tort case." *Seaman v. Seacor Marine, LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) (quoting *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999) (also quoting *Allen*, 102 F.3d at 199). The Fifth Circuit requires proof through medical testimony. *Seaman*, 326 F. App'x at 723; *Harriel v. BP Expl. & Prod. Inc.*, No. 2:17-CV-197-KS-MTP, 2019 WL 2574118 at *3 (S.D. Miss. May 15, 2019). For any testimony based on information outside the course of treatment, a Rule 26(a)(2)(B) expert report is required. *See Harriel*, 2019 WL 2574118 at *4.

Woodson has not designated any expert, provided any admissible expert causation opinions, or shown any proof of causation through medical testimony. *See* Mem. [36] at 7. Without any expert testimony, Woodson cannot carry her burden of proof on causation by providing scientific evidence of the harmful level of exposure to the chemicals, an essential element of her claim. *See Harriel*, 2019 WL 2574118, at *4. Further, Woodson has not provided any evidence of her level of exposure. She alleges that exposure to the dispersants that BP Defendants sprayed over large

6

areas during the clean-up may be harmful to human health, that they are eye and skin irritants, and that they may irritate the respiratory tract if inhaled. *See* Am. Compl. [4] at 4. Woodson asserts that one of the dispersants may also cause liver and kidney effects and/or damage or may irritate the gastrointestinal tract, and that acute exposure to it may cause adverse central nervous system effects, nausea, vomiting, and anesthetic or narcotic effects. *See id.* However, Woodson has not identified the levels of these substances at which these effects occur or the amount of these substances to which she was exposed.

While Woodson belatedly presented a number of exhibits [39], consisting of what appear to be her medical records, to ostensibly support her assertions that she does in fact suffer from various medical conditions, she has not identified proof through expert medical testimony that the chemicals used by the BP Defendants caused her ailments. Nor does Rule 56 impose upon the Court a duty to sift through the record in search of evidence to support Woodson's opposition to summary judgment. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). While the medical records reflect that Woodson self-reported to a medical provider her prior contact with hazardous materials related to the Oil Spill in April 2010, *see, e.g.,* Ex. [39-1] at 35, 39, 51, Woodson has not presented any evidence sufficient to prove that such exposure caused any of her medical issues.

For these reasons, Woodson has failed to raise a genuine issue of material fact on whether the Oil Spill caused her medical conditions. *See, e.g., McGill v. BP Expl. & Prod., Inc.*, No. 19-60849, 2020 WL 6038677, at *3 (5th Cir. Oct. 12, 2020)

(holding that "the district court's grant of summary judgment was proper because [the plaintiff] has failed to offer the evidence necessary to prove legal causation per the MSA under any plausible causation standard").  Because Woodson cannot meet her burden of proof on an essential element of her claim, summary judgment should be granted in favor of BP Defendants.

### III.  CONCLUSION

As Woodson has not shown the existence of a question of material fact for resolution at trial regarding causation, summary judgment should be granted.  To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants BP Exploration & Production, Inc. and BP America Production Company's Motion [35] for Summary Judgment Based on Lack of Causation is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Bertina Woodson's claims in this BELO lawsuit are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 27th day of October, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE